**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

EFRAIN LEONIDES-SEGURIA,

     Defendant.

No. 21 CR 390

Judge John F. Kness

**MEMORANDUM OPINION**

Defendant Efrain Leonides-Seguria, a native and citizen of Mexico, has made a number of trips to the United States. In fact, he has lived primarily in this country since he first arrived at the age of twenty-one. So far, so good—except that Defendant's visits to the United States were all unlawful and punctuated by criminal conduct that led to his being deported on several occasions. Defendant's multiple post-deportation returns also led to his being twice convicted by federal courts of unlawful entry by a previously deported alien.

It may not always be so that what's past is prologue,[1] but it is here: Defendant now stands charged in his third illegal reentry prosecution. Immigration authorities detained Defendant on a deportation warrant on June 15, 2021. Thirteen days later (on June 28), criminal agents arrested Defendant on a criminal complaint charging that Defendant illegally reentered the United States; that act was followed by a

---

[1] *See Donohoe v. Consolidated Operating and Production Corp.*, 833 F. Supp. 719, 722 (N.D. Ill. Sep. 28, 1993) (quoting William Shakespeare, *The Tempest* act 4, sc. 1, l. 261).

criminal information filed on July 27. Defendant moved to dismiss the information for violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, which requires that a criminal indictment or information be filed within thirty days of a defendant's arrest on criminal charges.

In seeking dismissal, Defendant relies on a doctrine known as the "ruse exception": a judge-made tool that prevents federal criminal authorities from using the expedient of state or civil detention to ensure both that a target for prosecution remains in custody and that the Speedy Trial Act's thirty-day indictment deadline remains at bay. As explained more fully below, however, applying the ruse exception is improper where, as here, there is no evidence that criminal prosecutors knowingly participated in a ruse to avoid the Speedy Trial Act's requirements. Stated differently, the ruse exception—an analytically problematic artifice—ought not, as Defendant seeks, be extended beyond its already-questionable boundaries. Defendant's motion to dismiss must therefore be denied.

## I. BACKGROUND

Defendant is a native and citizen of Mexico who has been removed from the United States on at least six previous occasions. On June 15, 2021, officers of Immigration and Customs Enforcement (ICE) detained Defendant, who had once again entered the United States, on an outstanding deportation warrant. Six days later, on June 21, ICE personnel referred Defendant's case to the United States Attorney's Office for potential criminal prosecution. On June 23, federal prosecutors filed a criminal complaint against Defendant, and a Magistrate Judge issued an

arrest warrant that same day. Five days later, on June 28, Defendant was arrested on the criminal complaint and warrant. On July 27, 2021, federal prosecutors, with Defendant's consent, formally filed an information charging Defendant with violations of 8 U.S.C. § 1326(a) and (b)(1) and 6 U.S.C. § 202(4) (illegal reentry of removed aliens).

Defendant first moved to dismiss the information by asserting the illegality of Section 1326. (Dkt. 35.) Then-presiding Judge Gary Feinerman denied that motion.[2] (Dkt. 54.) Defendant later filed the present motion to dismiss the information, arguing that the timeline of his arrest and charging violates the Speedy Trial Act. (Dkt. 68.) According to Defendant, some of his detention by ICE must count towards the Speedy Trial Act's thirty-day requirement during which an indictment or information must be obtained; the Government's information, Defendant contends, was at least four days late and must be dismissed. (*Id.*) Following briefing from the parties and an examination of the relevant statutory text, as well as judicial decisions interpreting those provisions, the Court orally denied Defendant's motion at a previous hearing. (Dkt. 108.) This opinion seeks to provide a fuller explanation of the reasons why the Court denied Defendant's motion.

## II.    DISCUSSION

At issue in this case is whether the criminal information against Defendant should be dismissed based on a purported delay in the filing of formal criminal charges against Defendant. Defendant contends that, because immigration officers of

---

[2] This case was transferred to the calendar of Judge John F. Kness upon Judge Feinerman's resignation. (Dkt. 71.)

the United States at some point maintained custody of Defendant for the primary purpose of pursuing federal criminal charges, this asserted delay constitutes a violation of the Speedy Trial Act warranting dismissal of the information with prejudice to refiling.

Both Defendant's motion and the government's response in opposition focus on a peculiarity of federal criminal law known colloquially as the ruse exception. This creature of precedent, which apparently has not previously been recognized by the Seventh Circuit, stands, in its most commonly applied form, for the proposition that the sanction of dismissal should be imposed when immigration officers and federal criminal prosecutors collude to hold an individual in immigration detention to avoid the strictures of the Speedy Trial Act.

This opinion focuses on the contours of the ruse exception, including its inception, growth, and how it has been defined by other courts. As part of its analysis, the opinion also explores the relationship between civil immigration enforcement provisions and the law of federal criminal prosecution.

### A.    Legal Background of the Ruse Exception

#### i.    *Immigration Enforcement and Federal Criminal Law*

As set forth in the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*., the Department of Homeland Security (DHS) is designated as the agency primarily responsible for enforcing immigration law. DHS is empowered—and occasionally required—to detain "aliens" unlawfully present in the United States with the final objective of deportation. *See, e.g.*, 8 U.S.C. § 1231. As does an arrest on

criminal charges, detention results in an alien losing his liberty. But as the Supreme Court has explained, deportation following detention "is not, in a strict sense, a criminal sanction." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010). On the contrary, deportation (called "removal" in the INA) is "a civil action." *Id.* at 363.

That removal proceedings are fundamentally civil in nature does not, in certain circumstances, preclude the concurrent pursuit of federal criminal charges. As relevant here, an individual can also be charged with criminal offenses for violating immigration law. *See, e.g.*, 8 U.S.C. § 1326 (fines or imprisonment available for illegal reentry following removal). An individual may thus be held accountable for violating immigration law both by civil authorities (*e.g.*, DHS) and in a federal criminal prosecution, leading to occasions in which civil and criminal law enforcement agents of the United States—both exercising different aspects of the executive power conferred under Article II of the Constitution—pursue different enforcement actions against the same individual.

When an alien is detained pending civil removal proceedings, the INA sets forth a comprehensive scheme governing the steps and timing relating to removal. *See, e.g.*, 8 U.S.C. § 1231. Conversely, when an individual is arrested on a federal criminal charge, the Sixth Amendment mandates that "the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. This right exists to "limit the time during which criminal charges are hanging over a person's head unresolved." *United States v. Janik*, 723 F.2d 537, 542 (7th Cir. 1983). Congress codified the constitutional speedy trial right through the Speedy Trial Act, which

5

establishes specific time limits pertaining to various stages of a criminal prosecution. *See* 18 U.S.C. § 3161 *et seq*. These limits include the requirement that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

To apply subparagraph (b) of Section 3161 effectively, a court must, at a minimum, comprehend and address the meaning of the words "offense" and "arrested." Defining "offense" is straightforward, as the Speedy Trial Act supplies the definition: it is a "Federal *criminal* offense." *See* 18 U.S.C. § 3172(2) (emphasis added).

Defining the meaning of "arrested" under the Speedy Trial Act is less straightforward. As the Seventh Circuit has explained, the Speedy Trial Act "draws its substance" from the Sixth Amendment speedy trial right. *United States v. Clark*, 754 F.3d 401, 405 (7th Cir. 2014). Because that Sixth Amendment right only applies to "persons who are formally accused of a crime," an "arrest[]" under the Act must therefore refer to an arrest on federal criminal charges. *Id.* Arrests that are "connected to civil matters"—such as a detention at the hands of ICE officials to facilitate deportation—typically do not "trigger the Speedy Trial Act." *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008); *see also United States v. Guevara-Umana*, 538 F.3d 139, 140 (2d Cir. 2008); *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000); *United States v. Guajardo-Martinez*, No. 21-CR-768, 2023

6

WL 5227144, at *4 (N.D. Ill. Aug. 14, 2023); *United States v. Stolica*, 2009 WL 4673893, at *3 (S.D. Ill. Dec. 3, 2009).

In the ordinary course, then, the detention of an alien in connection with a civil immigration enforcement proceeding does not trigger the Speedy Trial Act. This is so for two reasons: civil detention is not an "arrest," and a removal order following an enforcement proceeding does not constitute a criminal "offense." *See I.N.S. v. Mendoza*, 468 U.S. 1032, 1038 (1984). In some circumstances, however, courts have allowed a narrow departure from this text-based result under the prophylactic ruse exception, which permits courts to dismiss an indictment (or information) where a federal prosecutor colludes with civil immigration authorities to avoid the Speedy Trial Act. That precedential construct—the central issue in Defendant's motion to dismiss—is explored below.

### ii. *The Ruse Exception*

Although the detention of an alien for immigration enforcement proceedings ordinarily does not trigger the Speedy Trial Act, a number of federal courts outside of the Seventh Circuit have recognized an exception that applies if prosecutors collude with immigration authorities to avoid application of the Speedy Trial Act. *See, e.g.*, *United States v. Garcia-Echaverria*, 374 F.3d 440, 451 (6th Cir. 2004) (collecting cases). This exception is commonly known as the ruse exception. *See Guajardo-Martinez*, 2023 WL 5227144, at *2. As the courts that have applied this doctrine have explained, the ruse exception is intended to impose the sanction of dismissal where the prosecutorial arm of the government (which is bound by the

7

Speedy Trial Act) wrongfully colludes with its civil immigration cohort to avoid triggering the speedy trial clock.

As discussed below, an analysis of Defendant's motion to dismiss reveals difficulties both in reconciling the ruse exception with the clear text of the Speedy Trial Act and in applying the exception in a workable way. But to the extent the ruse exception may be viable in this Circuit, this opinion must address the argument as presented by Defendant. At bottom, the Court holds that the ruse exception—in whatever form it exists—does not support the dismissal of this case.

a.    Inception and development of the ruse exception

In various iterations, the ruse exception has existed for almost forty years. Its first appearance came as a dictum in a 1985 Eighth Circuit opinion, where the court, considering whether a delay of over one year between a state arrest on firearms charges and an indictment on federal firearms charges violated the Speedy Trial Act's timeline, concluded that a state arrest could not trigger the Speedy Trial clock "absent collusion between state and federal authorities." *United States v. Sims*, 779 F.2d 16, 17 (8th Cir. 1985). Seven years later, the Ninth Circuit similarly rejected an appellant's argument that "federal officers on a drug enforcement task force manipulated [] 'mock' deportation proceedings" in a "ruse" to evade the Speedy Trial Act timelines, finding no evidence that the INS proceedings against him "were undertaken in bad faith"; as a result, the Speedy Trial Act was not violated. *United States v. Orbino*, 981 F.2d 1035, 1036–37 (9th Cir. 1992). A year later, the Ninth Circuit established the ruse exception (if not yet in name) and explained its purpose:

8

"[t]he requirements of the Speedy Trial Act would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act. If a court found evidence of such collusion, the provisions of the Speedy Trial Act could be applied to state or civil detentions." *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993). As the D.C. Circuit put it in 1997, the ruse exception "merely carve[s] out a narrow exception to prevent prosecutorial manipulation of [Speedy Trial Act] deadlines." *United States v. Seals*, 130 F.3d 451, 455 (D.C. Cir. 1997).

Two years later, the decision of one district court established what is perhaps the apex of the ruse exception's application. In *United States v. Restrepo*, 59 F. Supp. 2d 133, 137 (D. Mass. 1999), the court held that "where [civil detention by the INS] is used *primarily or exclusively* to develop criminal charges involving the conduct on which the civil arrest was based, the time limit established by the Speedy Trial Act begins running on the date of the civil arrest." *Id.* (emphasis added). *Restrepo*, notably, did not acknowledge any requirement that a defendant show a "ruse" or collusion by government actors seeking to evade the Speedy Trial Act's requirements. *See id.* On the contrary, *Restrepo* referred merely to civil detention imposed by civil immigration authorities with an eye toward developing a criminal immigration case. It is possible that *Restrepo* assumed that such collusion would be present, but the opinion is silent on that point. *Restrepo* can thus be read to suggest that any detention—even one lacking a conscious effort by government actors to avoid

application of the Speedy Trial Act's time limits—in which civil detention is based on a desire to develop criminal charges must trigger the running of the Speedy Trial clock.[3]

### b.    Current state of the ruse exception

After *Restrepo*, most circuits (although not the Seventh) explicitly adopted the ruse exception. But the courts that adopted the ruse exception limited its application to instances reflecting genuine collusion by governmental actors. As the Fifth Circuit explained, the " 'ruse exception' [is] an effective way of protecting against the possibility of *collusion* between federal criminal authorities and civil or state officials. However, we will only apply this exception where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000) (emphasis added). By linking "collusion" with the "primary or exclusive purpose" language from *Restrepo*, the Fifth Circuit narrowed the ruse exception's potential applicability. Put differently, the Fifth Circuit in *Pena-Juarez* did not

---

[3] In *Restrepo*, the court also held that "[t]he INS has an obligation to act with all deliberate speed to remove from the United States a detained alien who has been finally determined to be deportable. Therefore, the Speedy Trial Act is triggered by an INS arrest whenever the INS detains an alien longer than is necessary to effect deportation in order to facilitate preparation of a criminal case against him relating to the conduct for which he was arrested civilly." 59 F. Supp. 2d at 138. But *Restrepo*'s requirement that immigration authorities move "with all deliberate speed" to remove a deportable alien does not appear in the text of the INA. On the contrary, 8 U.S.C. § 1231(a)(1) sets forth a clear 90-day "removal period" that, in some circumstances, can be extended for more than six months. *See* 8 U.S.C. § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022) (government need not "offer detained noncitizens bond hearings after six months of detention"). *Restrepo*'s amorphous "all deliberate speed" formulation thus forms the linchpin of a ruse exception that, in practical terms, requires no ruse.

endorse *Restrepo*'s bare "primary or exclusive" purpose test but instead required a defendant to show collusion—sharp practices[4]—on the part of government actors.

In requiring evidence of collusion, the Fifth Circuit does not stand alone. There is no reported decision of which this Court is aware, from any circuit, that omits, as does *Restrepo*, the collusive intent requirement of the ruse exception. *See, e.g.*, *Guevara-Umana*, 538 F.3d at 142 (requiring evidence of "collusion for the purpose of evading the [Speedy Trial Act]"); *Pasillas-Castanon*, 525 F.3d at 998 ("Without evidence of wrongful collusion for this purpose [evasion of the Speedy Trial Act], the exception does not apply."); *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001) ("[A] civil arrest by the INS does not trigger the [Speedy Trial Act] in the absence of collusion or evidence that the detention was for the sole or primary purpose of preparing for criminal prosecution."); *Seals*, 130 F.3d at 455 (purpose of exception is "to prevent prosecutorial manipulation" of Speedy Trial Act deadlines).

Some courts have also suggested that the presence of a lawful basis for civil detention prevents application of the ruse exception. *See, e.g.*, *Pasillas-Castanon*, 525 F.3d at 998 ("[I]f the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception." (Internal quotations omitted)); *see also Saucedo*, 956 F.3d at 553 (ruse exception "would not apply in this case

---

[4] In its most common formulation, the language of the ruse exception uses terms that refer to a culpable state of mind held by government actors. A "ruse" is "a wily subterfuge." Ruse, *Merriam-Webster's Collegiate Dictionary* (10th ed. 2001). And "collusion" means "[a]n agreement to defraud another or to do or obtain something forbidden by law." Collusion, *Black's Law Dictionary* (11th ed. 2019). But *Restrepo*'s formulation, read literally, removes these foundational, scienter-related terms and requires only a delay in an alien's removal without any showing of purpose or intent to avoid the Speedy Trial Act.

because the facts show that no ruse occurred. Immigration authorities undeniably had a lawful basis for their civil detention" of the defendant (internal quotation omitted)); *United States v. Stolica*, No. 09-CR-30047, 2010 WL 345968, at *1 (S.D. Ill. Jan. 26, 2010) ("The ruse exception cannot apply if it is shown that civil officials had a lawful basis for administratively detaining a defendant.").

As these decisions suggest, the ruse exception requires evidence of collusion between federal prosecutors and civil (or state) authorities for the purpose of evading the strictures of the Speedy Trial Act. In short, it requires a "ruse." This limitation is sound, for any lesser formulation—perhaps one that would allow mere delay in removing an alien by civil immigration authorities to prevent a later criminal prosecution—could cause both unnecessary conflict with the text of the Speedy Trial Act and an unwarranted intrusion on the power of the Executive to administer this Nation's immigration laws.

As to the Speedy Trial Act's terms, were the ruse exception to be applied where there was no collusive intent by prosecutors (that is, where any "delay" in beginning a criminal prosecution was occasioned only by immigration authorities), the meaning of "arrest" under the Speedy Trial Act would be rent from its understood and established meaning. *Clark*, 754 F.3d at 405 (Speedy Trial Act "arrest" is an arrest on federal criminal charges); *Pasillas-Castanon*, 525 F.3d at 997 ("[A]rrests connected to civil matters do not trigger the Speedy Trial Act."); *see also* Arrest, *Black's Law Dictionary* (11th ed. 2019) ("arrest" means, among other things, "[t]he taking or keeping of a person in custody by legal authority, esp. in response to a criminal

charge . . . .”). A narrowly-drawn, judge-made exception to a statute should not be expanded to the point of rewriting clear statutory terms.

To the extent the ruse exception could be wielded in a federal criminal prosecution in an effort to deter administrative delays in civil removal, the applicable statutory framework for the civil detention and removal of aliens suggests that the effort would be improper. Civil immigration enforcement is a process in which the power of the Executive is significant. *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (“For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government’s political departments largely immune from judicial control.”) (quotation omitted); *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972) (“Plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established . . . . Congress has delegated conditional exercise of [the power to exclude aliens] to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it . . . .”); *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019) (“Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions.”).

In view of this historical understanding, judicial review of immigration-related actions is commensurately well-defined and carefully cabined. *See, e.g.*, 8 U.S.C. § 1182(a)(9)(B)(v) (“The Attorney General has sole discretion to waive [the

inadmissibility of certain aliens unlawfully present] . . . . No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause."); *see also* 8 U.S.C. § 1252(a)(2)(B) (Except for constitutional or legal issues, "no court shall have jurisdiction to review . . . (i) any judgment regarding the granting" of discretionary relief from an order of removal.). This limitation of the judicial role in reviewing civil immigration administration suggests that use of the ruse exception to deter perceived foot-dragging by immigration authorities, without concomitant evidence of collusive conduct by prosecutors, would be improper.

In the end, the Court's denial of Defendant's motion to dismiss assumes that the Seventh Circuit would apply the ruse exception in some form. But that form must require a showing that prosecutors colluded to avoid the requirements of the Speedy Trial Act. Defendant's motion to dismiss is addressed with that understanding in place.

## B.     Application of the Ruse Exception to this Case.

As noted, application of the ruse exception requires that a defendant show purposeful collusion between civil and federal criminal authorities to avoid the Speedy Trial Act. To be sure, Defendant does not explicitly contend that government actors colluded to avoid the Speedy Trial clock. But in the interest of developing a fuller record concerning the fact-bound ruse exception, the Court conducted an evidentiary hearing. That hearing revealed no evidence of collusion, a finding that is fatal to Defendant's motion. Because the ruse exception cannot apply in the absence of a ruse, Defendant's motion to dismiss must be denied.

14

i. *Evidentiary Hearing*

At an evidentiary hearing, three ICE officers (Renée Fals, Jason Bennett, and Ana Brinson) testified regarding Defendant's arrest and detention. Those officers outlined typical ICE procedures regarding immigration detainees, deportation logistics, and referrals for prosecution. Each of the witnesses testified credibly; Defendant does not challenge their testimony in any event. No witness suggested any basis to find that ICE personnel and federal criminal prosecutors colluded to evade Speedy Trial Act timelines.

Officer Fals testified that she was an ICE deportation officer who worked in the criminal prosecutions unit. (Dkt. 90 at 13.) That team reviews the cases of detained individuals to determine whether they might qualify for criminal prosecution. (*Id.* at 14.) If an officer working in the prosecutions unit concludes that a case potentially qualifies for criminal prosecution, the officer presents the case to federal prosecutors. (*Id.*) When an officer in the prosecuting unit reviews a case, three possible outcomes exist: first, the officer may find that the case is not appropriate for referral to prosecutors; second, the officer may find the case appropriate for referral but prosecutors decline to prosecute; and third, the officer may find the case appropriate for referral and prosecutors decide to bring charges. (*Id.* at 15–17.) In either of the first two possibilities, where prosecutors do not file criminal charges, the detainee gets processed for deportation. (*Id.*)

This case involved the third possibility. Officer Fals received Defendant's case for review on June 21. (*Id.* at 21.) Officer Fals determined that Defendant's case was

a candidate for prosecution, so Officer Fals referred the case that same day to a federal prosecutor. (*Id.* at 22, 25.) On June 23, the prosecutor filed a criminal complaint against Defendant. (*Id.* at 35.) That evening, a magistrate judge issued an arrest warrant based on the complaint and supporting affidavit. (Dkt. 2.) ICE received the warrant for arrest on the complaint the following morning (June 24). (Dkt. 90 at 36.) Due to the unavailability of the prosecutor and other logistical difficulties in scheduling an arrest on either June 24 (Thursday) or 25 (Friday), Officer Fals scheduled Defendant's arrest for the following Monday (June 28). (*Id.*)

Officer Bennett's and Officer Brinson's testimony explained numerous actions both took when arresting and processing Defendant, including reading him his *Miranda* rights and tracking his ICE personnel file (A-file). (*Id.* at 84, 125–26, 171–72.) Officer Brinson testified about providing *Miranda* warnings to individuals with "an extensive criminal history" so that their answers could be "used in court later on." (*Id.* at 125–26.) Officer Brinson also explained that a detainee could not be deported without his or her A-file (a hard-copy item); because the criminal prosecution team holds the physical A-file while a detainee's case is under review, a detainee cannot be deported during the time when their case is under review for referral to federal prosecutors. (*Id.* at 171–72.)

ii.     *The Ruse Exception Does Not Justify Dismissal of the Information.*

Although there is no evidence that prosecutors colluded with ICE, the parties disagree as to whether the ruse exception even requires any showing of collusion. Defendant contends that the ruse exception applies because "ICE was holding

16

[Defendant] for the sole and express purpose of charging him criminally with illegal re-entry." (Dkt. 68 at 8); (Dkt. 93 at 1) ("This Motion [to dismiss] is not about proving Government malfeasance."). In contrast, the government contends that the ruse exception applies only if "the primary or exclusive purpose of [Defendant's] civil detention was to hold the defendant for future criminal prosecution *and bypass the Speedy Trial Act's requirements*." (Dkt. 72 at 6 (cleaned up; emphasis added).)

Defendant emphasizes that, once his case was referred for potential prosecution, Defendant's A-file shifted hands such that he could not be deported while the United States Attorney considered whether to charge Defendant. (Dkt. 93 at 2.) Defendant relies on *Restrepo* to argue that, regardless of any collusion involving prosecutors, the ruse exception applies because the primary or exclusive purpose of Defendant's civil detention was criminal prosecution once Defendant's A-file was transferred to prosecutors. And because the filing of the information occurred beyond the limit set by the Speedy Trial Act, the information must, Defendant maintains, be dismissed. (*Id.* at 4.)

Defendant's argument, as well presented as it is, fails because it is unmoored from the stated justification for the ruse exception: namely, preventing "[t]he requirements of the Speedy Trial Act [from] los[ing] all meaning" by allowing *collusion* between federal prosecutors and civil or state officials "solely for the purpose of bypassing the requirements of the Speedy Trial Act." *Cepeda-Luna*, 989 F.2d at 357. Contrary to Defendant's position (based as it is on *Restrepo*), and as discussed above, evidence of collusion to avoid the Speedy Trial Act must be the *sine qua non* of

the ruse exception. Put another way, no collusion means no ruse exception. Because Defendant has not shown that government actors colluded, and because the ruse exception must be limited to instances in which civil detention was a ruse, Defendant's motion to dismiss fails.

### iii. Practical Challenges in Applying the Ruse Exception.

Because Defendant cannot show that government actors engaged in a "wily subterfuge" to avoid the Speedy Trial Act, Defendant's motion to dismiss fails at the outset. But even if Defendant were able to show such chicanery, the facts of this case highlight the practical challenges in applying the ruse exception while trying to remain faithful to the text of the Speedy Trial Act.

By its terms, the Speedy Trial Act requires the statutory clock to begin running upon an arrest—the definition of which means an arrest on federal criminal charges. *See* 18 U.S.C. § 3161(b); *Clark*, 754 F.3d at 405. Congress could have drafted the Speedy Trial Act such that the clock began upon prosecutors' learning of the case, or upon filing of criminal charges, or upon civil authorities taking actions in anticipation of potential future prosecution, but it did not do so. To comply with the statutory language, therefore, a court that seeks to apply the ruse exception must identify a date when the arrest on federal criminal charges either occurred or *should be deemed to have* occurred. That exercise requires a court to examine the actions of the

prosecutors in learning of the case, choosing to seek and procure a charging instrument, and causing the arrest of the defendant.

In this case, Defendant argues that the Speedy Trial Act clock could, or should, have started at one of three waypoints: (1) upon detention by ICE officers; (2) upon ICE first notifying the U.S. Attorney's Office of the case; or (3) when the criminal complaint was filed. (Dkt. 68 at 8–9.) None of those events constituted a formal *arrest* on federal criminal charges, so the question is whether Defendant should constructively be deemed to have been "arrested" on one of the three earlier dates. As explained below, Defendant's smorgasbord of alternative dates presents unresolvable problems that illuminate the pragmatic challenges in applying the ruse exception.

*Detention by ICE officers on June 15, 2021.* There is no evidence to support the proposition that prosecutors were even aware of Defendant's case on that date. Because the ruse exception requires collusion, the Speedy Trial Act clock cannot be deemed to have started on June 15, 2021.

*First contact between ICE and federal prosecutors on June 21, 2021.* Defendant provides no compelling basis for holding, as a matter of law, that an arrest can be deemed to have occurred on the same day that prosecutors learn of a case. Defendant's dearth of authority supporting this dogmatic approach is understandable: prosecutors do not "arrest" federal criminal defendants by mind-meld. An arrest instead requires the physical apprehension of an individual based on probable cause. That apprehension can occur on-view by law enforcement officers (the arrest of a fleeing bank robber by police is but one example) or under the authority of an arrest warrant issued upon the filing of a criminal complaint establishing probable cause. *See* Fed. R. Crim. P. 4(a) ("If the complaint . . . establish[es] probable cause . . . , the judge must issue an arrest warrant . . . ."); 4(c)(1) ("Only a marshal or other authorized officer may execute a warrant."); and 4(c)(3) ("A warrant is executed by arresting the defendant.") An arrest does not occur when a prosecutor decides to pursue a criminal case against a potential defendant. Constructively deeming a defendant to have been "arrested" when prosecutors first learned of the case and decided to seek charges would thus be contrary to the meaning of "arrest." It would also be unworkable. Setting the date of arrest at when, for example, an Assistant United States Attorney first decided to seek criminal charges would unwisely accelerate the criminal process (by pressuring prosecutors to

decide more quickly whether to seek an indictment); fail to account for the ordered exercise of prosecutorial discretion; and ignore the rule that the question whether probable cause to arrest exists be presented early to a judicial officer (typically in connection with a request for an arrest warrant or upon a defendant's initial appearance following an arrest without a warrant, *see* Fed. R. Crim. P. 4(a), 5(b)). These considerations foreclose accepting Defendant's proposed date of arrest of June 21, 2021.

*Filing of the criminal complaint on June 23, 2021.* On June 23, prosecutors obtained a criminal complaint against Defendant, and that evening, a Magistrate Judge issued an arrest warrant based on a finding of probable cause. Defendant was arrested five days later by federal law enforcement agents executing that warrant. That interval was unremarkable: arrest warrants "command that the defendant be arrested and brought without unnecessary delay before a magistrate judge," Fed. R. Crim. P. 4(b)(1)(C), not that the arrest be executed immediately. *See, e.g., United States v. Toro*, 840 F.2d 1221, 1234 (5th Cir. 1988) (three-week delay between issuance of warrant and arrest "not *per se* unreasonable and the record does not reveal that the government acted unreasonably during the period or that its reasons for delaying execution were improper"); *United States v. Nasse*, 432 F.2d 1293, 1301 (7th Cir. 1970) (assessing delay between issuance of warrant and arrest on reasonableness grounds); *United States v. Joines*, 258 F.2d 471, 472 (3d Cir. 1958) ("[O]rdinarily there is no legal requirement that a warrant of arrest must be executed immediately or at the first opportunity . . . . Certainly there is no constitutional right to be arrested promptly or otherwise."). These authorities make clear that the filing of a criminal complaint is neither synonymous nor simultaneous with an arrest; Defendant's invitation to the contrary cannot therefore be accepted. In any event, concern that prosecutors and agents could sit on an arrest warrant for the nefarious purpose of stretching out the Speedy Trial indictment clock is ameliorated by the Rule's "without unnecessary delay" requirement.

In short, there is no basis to hold that prosecutors should have arrested Defendant on any of the three days proposed by Defendant. On the contrary, the evidence supports a finding that the thirteen day period Defendant was held in ICE custody before arrest on criminal charges—from June 15 to June 28—was of a reasonable duration. *Cf. Guajardo-Martinez*, 2023 WL 5227144, at *8 ("[T]welve days [in ICE detention before arrest on criminal charges] is clearly a reasonable amount [of] time for a detainee to wait in custody for deportation."); *see* 8 U.S.C. § 1231(a)(1)

(authorizing ICE up to ninety days of pre-deportation detention). Because the Speedy Trial Act clock did not begin to run on any of the earlier dates proposed by Defendant, and because the criminal information charging Defendant was filed fewer than thirty days after Defendant's arrest, the Speedy Trial Act was not violated.

*　　*　　*

To justify application of the ruse exception as other courts have explained it, there must be evidence that prosecutors colluded to avoid the Speedy Trial Act. No such evidence exists in this case. For those reasons, and because the information against Defendant was filed within thirty days of his arrest on federal criminal charges, the Speedy Trial Act was not violated. Even if there was reason to consider applying the ruse exception, the facts of this case provide no rational earlier date on which the Speedy Trial Act clock should have begun. For these reasons, there is no basis to dismiss the information.

### C.    No Dismissal With Prejudice

Untimely charges can be dismissed under the Speedy Trial Act, but judges retain discretion to determine whether any such dismissal should be with or without prejudice. *See United States v. Lloyd*, 50 F.4th 648, 654 (7th Cir. 2022) (citing *United States v. Taylor*, 487 U.S. 326, 334–35 (1988)). There is "no presumption in favor of either outcome," and "a district court's discretion over whether to dismiss with prejudice is substantial." *Id.* (cleaned up).

Because the criminal information filed against Defendant was both timely and not subject to challenge under the ruse exception, Defendant's motion to dismiss must

21

be denied. But even if dismissal was warranted, it should be without prejudice. To determine whether a dismissal on Speedy Trial Act grounds should be with or without prejudice, a court must weigh factors that include, among others: (1) the seriousness of the offense; (2) the facts and circumstances leading to the dismissal; and (3) the impact of a renewed prosecution on administration of the Speedy Trial Act and the interests of justice. *See* 18 U.S.C. § 3162(a)(1).

Each of those considerations supports a finding that any dismissal of this case should be without prejudice. Defendant's most recent illegal re-entry offense is serious; in fact, ICE considered Defendant a "high priority target" given his history of DUI convictions, a firearms violation, and multiple removals. (Dkt. 90 at 65; Dkt. 72-1.) Second, as explained above, the events surrounding Defendant's civil detention do not suggest any bad faith by any government official. And third, dismissal with prejudice on the evidence before the Court could disrupt established, good-faith collaborative efforts between ICE and federal prosecutors.

The purposes of dismissal with prejudice are to "send a stronger message than dismissal without prejudice, and . . . to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342. Those purposes would not be furthered by dismissal with prejudice in this case. Both ICE and prosecutors worked quickly to resolve Defendant's case. In the light of the testimony given at the evidentiary hearing, the Court finds no evidence that prosecutors sat on this case to Defendant's detriment. Accordingly, even if the case must be dismissed, that dismissal should be without prejudice.

22

### III.    CONCLUSION

Defendant's motion to dismiss the information is denied.


SO ORDERED in No. 21 CR 390.

Date: April 22, 2024

_____

JOHN F. KNESS
United States District Judge